UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00774-RJC-DSC

| | |
|---|---|
| **FIREBIRDS INTERNATIONAL, LLC**, | ) |
| Plaintiff, | ) |
| v. | ) |
| **FIREBIRD RESTAURANT GROUP, LLC** and **FIREBRID IP, LLC** | ) **ORDER** |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, (Doc. No. 9); Defendants' Brief in Support, (Doc. No. 9-1); Plaintiff's Memorandum in Opposition, (Doc. No. 14); Defendants' Reply, (Doc. No. 17); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 18); Plaintiff's Objections, (Doc. No. 19); and Defendant's Reply, (Doc. No. 20).

I.  BACKGROUND

Firebird International, LLC, ("Plaintiff") is a limited liability company with its principal place of business in Charlotte, North Carolina. (Doc. No. 1 at 2). Defendants Firebird Restaurant Group, LLC ("FRG") and Firebird IP, LLC, ("FIP") are limited liability companies with their principal place of business in Dallas, Texas. (Id.). According to the Complaint, Plaintiff operates over 40 restaurants in various states across the country. (Id. at 1). Plaintiff alleges that Defendants also operate restaurants, but only in Texas and Oklahoma. (Id.). In addition to physical locations, Defendants also operate an online store that provides food items shipped from their restaurants.

(Id.).  Because the Court is reviewing a motion to dismiss for lack of personal jurisdiction, it accepts the factual allegations of Plaintiff's Complaint as true.

Plaintiff continues to expand across the nation, opening new restaurants in different states and markets.  To support its mission, Plaintiff registered several trademarks including FIREBIRDS, FIREBIRDS WOOD FIRE GRILL, FIREBIRDS FIREBAR, FIREBIRDS for wine, FIREBIRDS +, FIREBIRDS INNER CIRCLE, and FB+.  (Id. at 4).  In 2008, Plaintiff became aware that FRG purchased El Fenix, another restaurant chain.  (Id. at 5).  FRG was operating under a business trade name at the time.  Concerned that the use of the term "firebird" within the FRG's name would result in consumer confusion, Plaintiff sent a letter to FRG's principal informing them of Plaintiff's rights to the FIREBIRDS mark.  (Id.).

In 2013, Defendant FIP filed an intent-to-use application with the Trademark Office for "FIREBIRD RESTAURANT GROUP +" to use for "restaurant management services for others." (Id.)  The trademark examining attorney denied FIP's application, concluding that their mark would result in consumer confusion when compared to Plaintiff's registered marks.  (Id. at 5–6). FIP appealed the examining attorney's refusal of their application and subsequently received approval from another examining attorney on remand.  (Id. at 6).  Plaintiff promptly responded by filing a Notice of Opposition with the Trademark Trial and Appeal Board and, through discovery, learned that Defendants were using the Firebird Restaurant Group mark through their restaurant services on menus and websites.  (Id. at 6–7).  Plaintiff cited instances of actual confusion including four letters addressed to Defendants' executives that were delivered to Plaintiff's address and an email to Plaintiff from Adobe Systems, Inc. requesting a meeting with Defendant.  (Id. at 7).

On November 8, 2016, Plaintiff filed their complaint before this Court against Defendants alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1051, et seq. as well as state law claims for unfair and deceptive trade practices. (Id. at 1). Defendants responded asserting that this Court lacks personal jurisdiction because Defendants have not sold products in North Carolina using the mark alleged by Plaintiff, nor do they own property or maintain business or bank accounts in North Carolina. (Doc. Nos. 9-1 at 5–7). In response, Plaintiffs argue that personal jurisdiction is proper in this District because Defendants maintain an interactive website that sells food products and apparel to "anywhere the website is accessible, including North Carolina residents." (Doc. No. 14 at 4). This website, Plaintiff claims, "clearly identified the owner and operator of the site as 'Firebird,' which it defined on the site as FRG, El Fenix (identified as an 'affiliated company' of FRG), and the 'other affiliated companies of [FRG]' (which would include Firebird IP, LLC), collectively." (Id. at 5). Defendants respond, stating that El Fenix—a non-party affiliated with FRG—maintained the website and holding Defendants responsible would amount to an improper basis for piercing the corporate veil. (Doc. No. 20 at 3). Furthermore, Defendants argue that El Fenix's website "does not focus on, or target residents of North Carolina." (Id.).

The Magistrate Judge submitted an M&R recommending this Court to grant Defendant's Motion to Dismiss and find no evidence that Defendants "directed any activities toward North Carolina other than for a period of time when a subsidiary corporation offered food items through a website displaying the name Firebird." (Doc. No. 18 at 3). This Court agrees with the M&R and thereby grants Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

## II. LEGAL STANDARD

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

"[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016). In such cases, the Court must construe all allegations and evidence available relating to the issue of personal jurisdiction in the light most favorable to the plaintiff. Id.

## III. DISCUSSION

Rule 4 of the Federal Rule of Civil Procedure prescribes that state law controls the extent to which a federal court may exercise personal jurisdiction over a defendant. FED. R. CIV. P. 4(k)(1)(A). Accordingly, North Carolina's Long Arm Statute governs the reach of courts over out-of-state defendants. N.C. GEN. STAT. ANN. § 1-75.4. However, the Due Process Clause of the Fourteenth Amendment limits the authority of a state in the application of its long-arm statute. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011). Plaintiffs, therefore, must navigate a two-step analysis, proving that exercising personal jurisdiction over a defendant comports both with the state long-arm statute as well as the requirements of due process. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990).

Because courts have held North Carolina's long-arm statute to extend to the maximum boundaries allowed by the Due Process Clause, the two-tiered analysis essentially folds into one: "whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (US 1945)). To establish minimum contacts, a plaintiff has two options: they may pursue either general or specific jurisdiction. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002). Under specific jurisdiction, the court exercises its power over a defendant when its contacts within the state are the basis of the plaintiff's cause of action. Id. In analyzing the contacts for specific jurisdiction, courts "consider (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id.

In contrast to specific jurisdiction, general jurisdiction allows a court to reach out-of-state defendants on the basis of contacts unrelated to the action. Id. at 712. However, those contacts under general jurisdiction must be "continuous and systematic," thus establishing a higher standard than specific jurisdiction. Id.

In his M&R, the Magistrate Judge found Plaintiff fulfilled neither general nor specific jurisdiction. (Doc. No. 18). The M&R explained that "[t]here is no evidence that Defendants purposely availed themselves of the privilege of conducting business [in North Carolina]." Id. Additionally, the M&R concluded that "[o]nline sales, if any occurred, are not the basis for this action and do not establish specific jurisdiction." Id.

5

Plaintiff objects to the above recommendation contending first that Defendants' sale of goods through their website was in fact the basis of their suit because those goods displayed the alleged infringing marks. (Doc. No. 19 at 4). Furthermore, Plaintiff cites Christian Sci. Bd. Of Directors of First Church of Christ, Scientist v. Robinson, 123 F. Supp. 2d 965 (W.D.N.C. 2000), to assert that generally available websites may suffice as minimum contact within a state when that site exchanges information with a user and solicits donations and sales. (Doc. No. 19 at 4–5). Plaintiff also objects to the M&R claiming it ignores Plaintiff's alternative basis for specific jurisdiction based on the Supreme Court case Calder v. Jones, 465 U.S. 783 (1984). (Id. at 7–8).

Defendants respond by arguing that, not only do Defendants not maintain the website in question, but that the website sells products under the mark EL FENIX. (Doc. No. 20 at 3–4). Defendant also states that the website does not establish the manifested intent to target North Carolina residents in order to justify exercising specific jurisdiction. (Id. at 4–5). For the reasons explained below, this Court agrees with and affirms the Magistrate Judge's M&R.

    A.    General Jurisdiction

The Court agrees and adopts the M&R's conclusion that Plaintiff has not established sufficient continuous and systematic contacts to establish general jurisdiction over Defendants in North Carolina. Because Plaintiff did not object to this finding of the M&R, the Court will not explain the matter further.

    B.    Specific Jurisdiction

First, turning to the website itself, the Court recognizes that Plaintiff and Defendant are engaged in a factual dispute. Plaintiff asserts that Defendants own and operate the website in question. (Doc. 19 at 6). In doing so, Plaintiff relies upon an affidavit stating that the website displayed: "Firebird owns and is responsible for this site." (Doc. No. 15-2). This affidavit also

states that the website further defined "Firebird" as FRG and its affiliated companies, such as El Fenix. (Id. at 2). Defendant responds, putting forth affidavits of their own and arguing that El Fenix Corporation, a separate non-party entity, owns and operates the website and sells products under its own marks rather than the infringing marks alleged by Plaintiff. (Doc. Nos. 9-2, 9-3)

Plaintiff asserts that the Court should assume Defendants' ownership of the website because "all factual disputes should be resolved in Firebirds' favor." (Doc. No. 19 at 6). Defendant, however, argues that this stretches the legal standard too far and that this Court must consider all parties' proffered proof in order to truly consider "all relevant pleading allegations" when ruling upon a motion to dismiss for lack of personal jurisdiction. (Doc. No. 20 at 3).

Both Plaintiff and Defendant have proffered evidence to support the conflicting views of who owns the website in question. (Doc. Nos. 9-2, 9-3, 15-1 to 15-9). "Where both sides present evidence about personal jurisdiction, factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made." Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993)). Because these documents directly conflict with one another, the Court will construe them in favor of Plaintiff and view the website as Defendants' for the purposes of this motion.

The Court now turns to whether or not the sale of food products off of the El Fenix website forms the basis of Plaintiff's cause of action—a requirement for specific jurisdiction. The Court finds it does not. In Carefirst of Maryland, Inc. v. Carefuirst Pregnancy Centers, Inc., the Fourth Circuit assessed whether federal courts in Maryland could extend personal jurisdiction to an out-of-state defendant on the basis of their online presence. 334 F.3d 390 (4th Cir. 2003). The plaintiff in that case, like Plaintiff here, alleged trademark infringement. Id. at 395. In Carefirst, the court

ultimately held that personal jurisdiction in Maryland was not warranted. Id. at 401. However, when assessing specific jurisdiction, the court found that proposed in-state contact—a website that solicited donations and the sale of products—was the basis of the cause of action. Id. at 398, 400. The court phrased the contact analysis as the defendant's "unlawful online conduct." Id. at 398. This unlawful conduct consisted of soliciting donations, submitting emails, mailing promotional materials, and establishing a toll-free hotline all under an infringing mark and all available to Maryland residents. Id.

Unlike in Carefirst, the products sold on the El Fenix website are not sold under a mark featuring the term "firebird." Where Caremark featured donations solicited under the alleged infringing mark, the products sold online in the case at hand are sold under the name of a non-party—El Fenix. A large banner featuring the El Fenix logo spans the top of the websites' page at all times. Affixed upon the bags of pralines sold on the website are red ovals with the term "El Fenix." (Doc. No. 15-3). Tank-tops, t-shirts, and aprons—all available for sale online—feature one logo: "El Fenix." (Doc. No. 15-4). Yet Plaintiff is not suing El Fenix. Plaintiff is suing Firebird. Although Plaintiff points to the legal clauses of the El Fenix website, they have done nothing more than prove that El Fenix is a subsidiary of Defendants that sells products under its own name online. "A parent-subsidiary relationship does not by itself support jurisdiction." Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) (citing Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir.2005)). "More must be shown, such as an agency relationship or another reason to pierce the corporate veil." Id. See also, Mylan Labs., 2 F.3d at 62 (looking to evidence such as shared officers, directors, or corporate functions).

While Defendants may own El Fenix, specific jurisdiction demands that the cause of action arise out of the minimal contacts alleged. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466

U.S. 408, 414 (1984); Carefirst of Maryland, Inc., 334 F.3d at 397; ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); i play, inc. v. Aden & Anais, Inc., 186 F. Supp. 3d 518, 522 (W.D.N.C. 2016). Here, the sale of items under the "El Fenix" name does not infringe Plaintiff's Firebird mark, therefore the minimal contacts established by the El Fenix website—if any—do not comprise the basis of Plaintiff's claim.

Even if the El Fenix website forms the basis of Plaintiff's cause of action, this Court finds that the El Fenix website is insufficient to establish the required minimum contacts in North Carolina to justify exercising specific jurisdiction over Defendants. The Court again finds Carefirst helpful in deciphering this issue. In that case, the court deemed defendant's website insufficient to establish minimum contacts in Maryland. The court first noted that, when assessing websites in relation to personal jurisdiction, the Fourth Circuit adopted the analysis formed in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa.1997). Carefirst, 334 F.3d at 399. In Zippo, the court funneled principles of specific jurisdiction through a sliding scale model of website interactivity. Id. Under this sliding scale, the more interactive a site is, the more specific jurisdiction is warranted. An interactive website allows owners to "enter[] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." Zippo, 952 F. Supp. at 1124. Passive websites, on the other hand, merely make information available to users. Carefirst, 334 F.3d at 399. In ALS Scan, Inc. v. Digital Service Consultants, Inc., the Fourth Circuit translated this sliding scale into three elements. 293 F.3d 707, 714 (4th Cir.2002). A court may exercise specific jurisdiction in accordance to due process if the defendant: "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that

9

activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." (Id.).

In assessing whether the defendant directed electronic activity into the forums state, the Carefirst court qualified a defendant's website as "semi-interactive." Id. at 400. The site contained features that made it possible for users to exchange information with site host. Because the website was neither passive nor highly interactive, exercising specific jurisdiction was determined "by examining the level of interactivity and commercial nature of the exchange of information that occurs." Id. at 400–01 (quoting Zippo, 952 F. Supp. at 1126). This semi-interactive site "solicit[ed] donations; educat[ed] pregnant women about nutrition, infant care, and prenatal care; provid[ed] references to Chicago-area medical doctors and hospitals; promot[ed] its counseling services and parenting classes; and advertis[ed] the pregnancy tests and ultrasound services that it offers free of charge." Id. at 394. Furthermore, "[t]he website assert[ed] at several points that the geographic focus of CPC's activities is the Chicago metropolitan area." Id.

The Carefirst court declined to extend specific jurisdiction for several reasons. First, the only exchange Maryland residents had with the site was a single donation made by the plaintiff's own counsel. Id. at 401. Second, the website was largely local in character. That is, the website very much focused on the defendant's work in the greater Chicago area rather than in Maryland. Id. The only outreach to Maryland by defendants through the website was for general donations that were accepted from anyone anywhere. Id. "Such a generalized request [was], under the circumstances, an insufficient Maryland contact to sustain jurisdiction in that forum." Id.

Like Plaintiff here, the plaintiffs in Caremark based their jurisdictional argument on the fact that Maryland was the state that felt the injuries resulting from defendant's alleged trademark infringement. Id. The court did not find that such an impact controlled the outcome of the

jurisdictional analysis. Although injuries resulting from the defendant's alleged trademark infringement were suffered in Maryland, and while such injuries were relevant to the jurisdictional inquiry, those injuries must nonetheless accompany Defendant's sufficient minimum contacts within the forum state. Id. (citing Young v. New Haven Advocate, 315 F.3d 256 (4th Cir.2002)).

After reviewing the parties' briefs, the M&R, and applicable case law, the Court finds that exercising personal jurisdiction over Defendants is improper. While the El Fenix website seems to have a more national scope than the website in Caremark, the Fourth Circuit has held that minimum contacts are not fulfilled when a website "focuse[s] its activities more generally on customers located throughout the United States and Canada without focusing on and targeting [the forum state specifically]." Carefirst, 334 F.3d at 401 (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)).[1] Rather, a defendant must focus its sights on North Carolina residents specifically, showing a "manifest intent" to engage in business within the state. Id.

Plaintiff cites iplay, inc. v. Aden & Anais, Inc. for the proposition that a website that offers sales generally across the nation warrants the exercise of specific jurisdiction. 186 F.Supp.3d 518 (W.D.N.C. 2016). However, unlike the website in iplay, Defendant here does not sell products through North Carolina retailers. Id. at 524–25. Nor does the El Fenix website feature a store locator that guides online consumers to products sold physically within the state. Id. at 524.

Plaintiff also relies on Christian Sci. Bd. Of Directors of First Church of Christ, Scientist v. Robinson, 132 F. Supp. 2d 965, 975 (W.D.N.C. 2000), for supporting the proposition that the

---

1   The Court notes Plaintiff's objection to the Magistrate Judge's use of ESAB because it pre-dates Zippo, which was subsequently adopted by the Fourth Circuit in ALS Scan, Inc.. (Doc. No. 19 at 4). However, the Fourth Circuit quotes the rule described in ESAB—that defendant websites must intentionally target and focus on the forum state—when assessing the ALS Scan, Inc. analysis of whether a defendant directed electronic activity into a forum state with the manifest intent of engaging in business or other interactions. See Carefirst, 334 F.3d at 401.

11

Fourth Circuit has found personal jurisdiction "where defendants operated an interactive web site generally available, capable of exchanging information with a user, and on which solicitations for donations were made and products were offered for sale." (Doc. No. 19 at 4–5). However, the holding of that case is more nuanced than Plaintiff represents. On appeal, the Fourth Circuit's deciding factor in the decision was the defendant's relationship with an in-state party who actively maintained and operated defendant's website. Christian Sci. Bd. Of Directors of First Church of Christ, Scientist v. Robinson, 259 F.3d 209, 216–17 (4th Cir. 2001). Such a lasting, collaborative relationship with a party in the forum state was not fortuitous or unwitting, but deliberate—thus creating sufficient contacts within the state to hinge jurisdiction upon. Id. The court in Christian Sci. Bd. did not address the issue pertinent to this case. In fact, the Court explicitly stated:

> This Court has not addressed the propriety of exercising jurisdiction over a defendant whose only contact with the forum state consists of a website accessible by residents of the forum. While this is an important question—and one which has garnered considerable attention—we need not resolve it in this case, because the [defendants] had specific contacts with North Carolina providing an independent and valid basis for personal jurisdiction

Id. at 218. Christian Sci. Bd. may have provided Plaintiff's their desired outcome, but its reasoning remains on an entirely separate, albeit parallel, track.

    C.    <u>Plaintiff's *Calder* Theory for Specific Jurisdiction</u>

Lastly, Plaintiff objects to the M&R, arguing that the Magistrate Judge ignored an additional basis for specific jurisdiction based on Calder v. Jones, 465 U.S. 783 (1984). (Doc. No. 19 at 7). Plaintiff argues that they warned FRG of their possible trademark infringement and that FRG nonetheless continued to use the term "firebird," which resulted in instances of actual confusion. (Id.). Plaintiff asserts that such a deliberate effort to cause a purposeful effect in North Carolina allows this Court to exercise specific jurisdiction. (Id. at 7–8). To support this theory,

Plaintiff analogizes to Calder, a case where specific jurisdiction in California was upheld over a Florida-based writer after the writer intentionally aimed a tortious act at a California resident. 465 U.S. at 790–91.

In order to satisfy the Calder "Effects Test," plaintiffs must prove: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Carefirst, 334 F.3d at 398 n. 7. In identifying the role of this test in the analysis for personal jurisdiction, the Fourth Circuit interpreted the Zippo analysis explained above as a "model for applying Calder principles to cases arising from electronic commerce." Id. at 399.

Even if the Court were to separate the Calder effects test from Zippo, the Plaintiff nonetheless fails to establish jurisdiction. Perhaps, trademark infringement is considered an intentional tort. Epic Tech, LLC v. STHR Grp., LLC, No. 1:15CV252, 2015 WL 8179513, at *7 n.9 (M.D.N.C. Dec. 7, 2015), report and recommendation adopted, No. 1:15-CV-252, 2015 WL 9592522 (M.D.N.C. Dec. 31, 2015). However, even if the Court were to assume that Plaintiff felt the "brunt of the harm" in North Carolina from Defendants' alleged trademark infringement, Plaintiff's Calder theory would fail the third element of test. As explained above, the El Fenix website does not expressly target North Carolina. The Fourth Circuit has repeated several times that, "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction ... is to be upheld." Carefirst, 334 F.3d at 401; Young v. New Haven Advocate, 315 F.3d 256, 262 (4th Cir. 2002); ESAB Group, 126 F.3d at 626.

IV.     CONCLUSION

After review of the parties' motions, objections, and supporting memoranda, this Court agrees with and adopts the Magistrate Judge's M&R.  Plaintiff cannot establish specific jurisdiction.  First, the El Fenix website does not form the basis of Plaintiff's cause of action.  Even if it did, the website does not establish the necessary sufficient minimum contacts needed to exercise personal jurisdiction on an out-of-state defendant.

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's Memorandum and Recommendation is **ADOPTED.**
2. the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, (Doc. No. 9) is **GRANTED**.

3.

Signed: September 30, 2017

Robert J. Conrad, Jr.
United States District Judge